**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:19CR70 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| ROBERT D. PETERS, | ) | **MEMORANDUM OF OPINION AND** |
| | ) | **ORDER ON LOSS AMOUNT** |
| Defendant. | ) | |

**I. INTRODUCTION**

On April 10, 2019, Defendant Robert D. Peters ("Peters") pled guilty as to Count 1 of the Indictment, which charged Peters with Conspiracy to Pass or Utter Counterfeit Obligations or Securities, in violation of 18 U.S.C. §§ 371 and 472, from April 6, 2017 continuing through April 29, 2018. (Min. of Proceedings Apr. 10, 2019; Indictment 1-10, ECF No. 1. *See also* PSR ¶¶ 1-2, ECF No. 36.) On July 24, 2019, this Court conducted an initial sentencing hearing for Peters. (Initial Sentencing Hr'g Tr., ECF No. 52.)

Prior to the hearing, Peters objected to the Presentence Investigation Report ("PSR"), which stated that $38,400 was the total loss amount as a result of the conspiracy, all of which was attributable to Peters. (PSR ¶¶ 11-13, ECF No. 36. *See also*, Peters' Sentencing Mem., ECF No. 43.) Peters argued that only $5,679.60 is the loss amount attributable to him given the time he was incarcerated during the timeline of the conspiracy as indicted. (Peters' Sentencing Mem. 1-6, ECF No. 43.)

During the initial sentencing hearing, this Court heard oral arguments from counsel for each party and testimony from the government's witness, Special Agent Kevin Williamson. (*See*

*generally* Initial Sentencing Hr'g Tr., ECF No. 52.) For the reasons set forth in this Memorandum, this Court finds that the government has met its burden of proof and, therefore, the loss amount attributable to Peters is $38,400.

## II. BACKGROUND

On April 10, 2019, Peters pled guilty to Count 1 of the Indictment, which charged that from April 6, 2017 through April 29, 2018, "Allyn D. Bell, Robert D. Peters, and Tori T. Smith, did knowingly and intentionally combine, conspire, confederate, and agree together and with each other to commit one or more offenses against the United States of America, to wit: pass to employees at various commercial establishments, falsely made, forged, and counterfeited obligations of the United States, that is, Federal Reserve Notes . . ., which they then knew to be falsely made, forged, and counterfeited . . .." (Indictment ¶ 1, ECF No. 1.) Count 1 of the Indictment further explains that Peters and his co-conspirators travelled to different cities in Ohio, Pennsylvania, and Michigan to purchase items from various retail stores that were small in size, but high in value, with counterfeit $100 bills. (*Id.* at ¶ 3.) Peters and his co-conspirators would then take the item purchased with counterfeit currency to a different location of the retail store than where it was purchased and return the item for genuine currency. (*Id.*)

During part of the April 6, 2017 to April 29, 2018 timeframe of the conspiracy Peters was incarcerated. (*See* Peters' Sentencing Mem. 1-6, ECF No. 43; PSR ¶ 52, ECF No. 36.) According to the PSR, on September 12, 2017, Peters was sentenced to 180 days incarceration for forgery and was given credit for 77 days served. (PSR ¶ 52, ECF No. 36.) Therefore, Peters was incarcerated in or around June 27, 2017 through December 24, 2017.[1] (*See id.*) Thereafter, on April

---

[1] The Court calculated these dates of incarceration based upon the information contained in the PSR and the September 12, 2017 Journal Entry for Peters' Medina County case. *State of Ohio v. Robert D. Peters, Jr.*, 17CR0465, Medina County, filed May 31, 2017.

29, 2018, Peters was discovered, again, to have counterfeit currency in his possession when he ran from police officers and a counterfeit $100 bill was located in his wallet, which he dropped while fleeing. (Initial Sentencing Hr'g Tr. 27:14-28:25, ECF No. 52.)

Finally, on February 19, 2019 Peters was arrested for the underlying offense before this Court. (*See* Docket Entry, Feb. 19, 2019.) At the time the arrest warrant for Peters was executed, both Peters and one of his co-conspirators, Allyn D. Bell, were arrested while at Peters' home. (Initial Sentencing Hr'g Tr. 22:19-21, ECF No. 52.) At the time of the arrests, a search warrant was obtained, Peters' home was searched, and counterfeit currency, equipment to make counterfeit currency, and equipment to make counterfeit credit cards were all found within Peters' home – this included a counterfeit $100 bill which was located in the toilet. (*Id.* at 22:4-23:11.)

The government calculated the total loss amount of the conspiracy from April 6, 2017 through April 29, 2018 as $38,400. (PSR ¶¶ 11-13, ECF No. 36.) Special Agent Kevin Williamson ("Williamson") testified as to how the government calculated the total loss amount. (*See generally* Initial Sentencing Hr'g Tr., ECF No. 52.) First, Williamson utilized police reports, video surveillance, and victim statements to prove that Peters and his co-conspirators made certain passes of counterfeit currency with specific serial numbers at various retail establishments. (*Id.* at 10:5-17.) The loss amount associated with all these proven passes of counterfeit currency by Peters and his co-conspirators was calculated as $23,900. (*Id.* at 10:5-21.)

In addition, the serial numbers of the counterfeit currency Peters and his co-conspirators passed were recorded. (*Id.* at 11:10-17.) The PSR explains how the additional $14,500 in loss is attributed to Peters and his co-conspirators because of the known, recorded serial numbers. (PSR ¶ 13, ECF No. 36.) "For example, for one transaction, evidence may show that Peters passed 5 counterfeit $100 bills with the same serial number, but the investigation recovered only one of those physical

bills. The Secret Service's system still shows, however, that four bills with the same serial number as the recovered bill were passed on the same day. It is therefore reasonable to infer that Peters passed those four bills along with the fifth recovered one and is therefore liable for that loss." (*Id.*) Therefore, Williamson explained that with the known, recorded serial numbers passed by Peters and his co-conspirators, along with the proven passes of counterfeit currency by Peters and his co-conspirators, the total loss amount for the entire conspiracy between April 6, 2017 and April 29, 2018 was calculated as $38,400. (Initial Sentencing Hr'g Tr. 11:18-23, ECF No. 52..) However, Williamson noted that this figure is conservative because not all of the counterfeit currency has been recovered. (*Id.* at 13:11-14:10.)

In response to the calculated $38,400 total loss amount, Peters argues that the loss amount attributable to him is only around $5,000 because that is the amount that can be directly tied to Peters' personal activities while he was not incarcerated. (*Id.* at 24:3-10.) In contrast, the government argues that $38,400 is the loss amount attributable to Peters because that entire amount is tied to the entire conspiracy, in which Peters was involved. (*Id.* at 24:11-14.)

Therefore, the issue before this Court is which loss amount, that of Peters' personal activities only or that of the entire conspiracy, is attributable to Peters.

### III. ANALYSIS

1. <u>Determination of Loss Amount Attributable to Peters</u>

The government must prove the loss amount attributable to Peters by a preponderance of the evidence. *United States v. Donadeo*, 910 F.3d 886, 901 (6th Cir. 2018) (citing *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999)). When determining the amount of loss attributable to Peters, this Court may consider any "relevant conduct," which includes:

> (A) all [criminal] acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant, and
>
> (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were –
>
>> (i) within the scope of the jointly undertaken criminal activity,
>>
>> (ii) in furtherance of that criminal activity, and
>>
>> (iii) reasonably foreseeable in connection with that criminal activity;
>
> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility from that offense.

*Donadeo*, 910 F.3d at 894 (citing *United States v. Hodge*, 805 F.3d 675, 678-79 (6th Cir. 2015)). In sum, "the amount of loss attributable to a defendant may include any loss that results from his/her own criminal conduct, as well as any loss that resulted from certain conduct of others." *Donadeo*, 910 F.3d at 894 (citing *United States v. Kennedy*, 714 F.3d 951, 960-61 (6th Cir. 2013)). The "certain conduct of others," is, necessarily, conduct that is "within the scope of", "in furtherance of", and "reasonably foreseeable in connection" with the "jointly undertaken criminal activity." *See United States v. Campbell*, 279 F.3d 392, 400 (6th Cir. 2002) (explaining that a court must "make particularized findings with respect to both the scope of the defendant's agreement and the foreseeability of his co-conspirators' conduct before holding the defendant accountable for the scope of the entire conspiracy").

### a) Scope of the Criminal Activity

Therefore, the first step this Court must take to determine the loss amount attributable to Peters is to "determine the scope of the criminal activity the particular defendant agreed to jointly undertake." *Donadeo*, 910 F.3d at 894 (quoting U.S.S.G. § 1B1.3 cmt. n.3(B)) (internal quotation marks omitted).

The scope of a defendant's agreement to engage in jointly undertaken criminal activity can be demonstrated by an admission of guilt to conspiracy. *See United States v. Labib*, 38 F. App'x 257, 261 (6th Cir. 2002); *United States v. Carmichael*, 676 F. App'x 402, 407 (6th Cir. 2017) (explaining that when determining scope, "the court looked to [defendants'] guilty pleas, in which both defendants accepted responsibility" for the conspiracy). In the instant matter, Peters pled guilty to engaging in a conspiracy to utilize counterfeit currency to purchase goods at retail establishments and subsequently return the goods to a different retail establishment location to receive legitimate currency between April 6, 2017 and April 29, 2018 – which establishes the scope of the criminal activity Peters agreed to jointly undertake.

Peters now argues that the scope of his agreement to engage in this conduct was cut off when he was imprisoned between June 2017 and December 2017. (Peters' Sentencing Mem. 1-6, ECF No. 43.) However, Peters' plea states otherwise as he pled guilty to conspiracy with a timeline of April 6, 2017 through April 29, 2018. Even if the indictment did not include beginning and end dates, Peters pled guilty to engaging in a conspiracy to utilize counterfeit currency – which is the precise activity he engaged in before his incarceration and, as evidenced by the counterfeit $100 contained in his wallet on April 29, 2018, the activity he also engaged in after his incarceration. *See Campbell*, 279 F.3d at 400 ("In order to determine the scope of the defendant's agreement, the district court may consider any explicit agreement or implicit agreement fairly inferred from the conduct of defendant and others") (quoting *United States v. Studley*, 47 F.3d 569, 574 (2d Cir. 1995)) (internal quotation marks omitted).

Therefore, despite his incarceration, Peters agreed to jointly undertake in criminal activity involving counterfeit currency between April 6, 2017 and April 29, 2018. Any conduct by him or his co-conspirators utilizing counterfeit currency to purchase goods at retail establishments and

subsequently return the goods to a different location to receive legitimate currency between April 6, 2017 and April 29, 2018 is attributable to Peters as it is within the scope of the conspiracy to which he agreed and in which he engaged.

### b) Reasonable Foreseeability

The second step this Court must take to determine the loss amount attributable to Peters is to determine whether the actions of Peters' co-conspirators were reasonably foreseeable to Peters in connection with the jointly undertaken criminal activity. Reasonable foreseeability is an objective test. *United States v. Wymer*, 654 F. App'x 735, 754 (6th Cir. 2016) (citing *United States v. Cochran*, 14 F.3d 1128, 1132 (6th Cir. 1994)). As part of this test, a defendant need not be directly involved with, actively participate in, or physically be present during every instance of illegal conduct of his co-conspirators for that conduct to be reasonably foreseeable to the defendant. *See Wymer*, 654 F. App'x at 755 ("A defendant need not be directly involved in a theft" for that theft to be reasonably foreseeable to the defendant); *Campbell*, 279 F.3d at 400-01 (co-conspirator conduct was reasonably foreseeable when a defendant "was aware that the conspiracy was broader than merely the three transactions with which he was involved"); *Carmichael*, 676 F. App'x at 407 (given the scope of Carmichael's participation in the conspiracy, she was still accountable for co-conspirator's actions while she was "at home in Georgia").

With respect to the foreseeability of loss amount specifically, "'[i]n the case of a jointly undertaken criminal activity . . . , all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity' shall be included in determining the proper loss amount . . . ." *Carmichael*, 676 F. App'x at 407 (quoting *United States v. Stoian*, 73 F. Supp. 3d 830, 838 (E.D. Ky. 2014)). Peters argues that the total loss amount of $38,400 is not attributable to him because he was incarcerated for a period of time between April 2017 and April 2018.

(Peters' Sentencing Mem. 1-6, ECF No. 43.) Despite pleading guilty to involvement in the conspiracy between April 6, 2017 and April 29, 2018, Peters now argues that two separate conspiracies occurred during that period – one in which he was involved in, which ended on the date of his incarceration, and the other, which occurred during the time he was incarcerated and, therefore, was not reasonably foreseeable to him. (*See id.*) This Court is not persuaded by Peters' argument.

The activity that Peters' co-conspirators engaged in during Peters' incarceration was reasonably foreseeable to Peters given his involvement in the conspiracy both before his incarceration and after. Before his incarceration, as pled to, Peters and his co-conspirators purchased small, high value items at retail establishments with counterfeit currency and thereafter, returned the items at a different location of the retail establishment in order to receive genuine currency. Peters' co-conspirators engaged in this exact same activity during Peters' incarceration, the only difference was that Peters was not present. (*See generally* Indictment, ECF No. 1.) Because the activity during Peters' incarceration was no different than the activity in which the co-conspirators engaged while Peters was not incarcerated, and because physical presence is not required to establish objective reasonable foreseeability, this Court finds that the activities of Peters' co-conspirators was reasonably foreseeable to Peters while he was incarcerated.

Finally, there is no indication that Peters withdrew from the conspiracy at the time of his incarceration. *See United States v. Robinson*, 390 F.3d 853, 882 (6th Cir. 2004) (explaining that even if an individual is no longer an active member of a conspiracy due to location or incarceration, "he is nonetheless presumed to be a continuing member, and is chargeable for the subsequent acts of co-conspirators, so long as the conspiracy was ongoing and [the defendant] did not establish his affirmative withdrawal from the conspiracy"). Because "[m]ere cessation of activity is not

sufficient to establish withdrawal from a conspiracy" and "arrest or incarceration does not qualify as an affirmative, volitional act of withdrawal" it is well within the confines of the law for this Court to determine that Peters was still a member of the conspiracy during his incarceration.

This is particularly appropriate because, after Peters was no longer incarcerated, he was, once again, found with counterfeit currency in his possession. Even more telling is the fact that when arrested in his own home, law enforcement officials located more counterfeit currency and the materials needed to make counterfeit currency and counterfeit credit cards. These facts belie Peters' argument that he was no longer engaged in the conspiracy at the time his incarceration began as these instances occurred well after his incarceration ended.

For all of the foregoing reasons, the actions of Peters' co-conspirators were objectively reasonably foreseeable to Peters, even while incarcerated. Therefore, the entire loss amount of $38,400 is attributable to Peters.

## IV.  CONCLUSION

Therefore, for all of the reasons enumerated throughout this memorandum, as this Court has made particularized findings of fact regarding the scope of the conspiracy in which Peters was involved and the objectively reasonable foreseeability of Peters' co-conspirators' activities while Peters was not present, this Court finds that the total loss amount of $38,400 is attributable to Peters.

IT IS SO ORDERED.

DATE: November 19, 2019 /s/ John R. Adams
Judge John R. Adams
UNITED STATES DISTRICT COURT